AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

**FILED**

OCT 0 3 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br><br>Kendall Thrift<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)<br>)<br>)<br>) 2:14 - MJ  2 3 1   **AC** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 9, 2014_____ in the county of _____El Dorado_____ in the

_____Eastern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Marijuana [at least 100 kilograms] |
| 21 U.S.C. § 846 | Conspiracy to Distribute Marijuana [at least 100 kilograms] |
| 18 U.S.C. § 922(g) | Possession of a Firearm by a Prohibited Person |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Offense |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF Special Agent David Morris

☑ Continued on the attached sheet.

_____
*Complainant's signature*

David Morris, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/3/14___

_____
*Judge's signature*

City and state: _____Sacramento, California_____

United States Magistrate Judge Allison Claire
*Printed name and title*

## Affidavit of Special Agent David Morris

I, David Morris, being duly sworn, hereby state:

## Purpose

1. This Affidavit is made in support of a criminal complaint and an arrest warrant for **KENDALL THRIFT** for:

   **COUNT 1:** Possession with Intent to Distribute Marijuana (21 U.S.C. § 841 (a)(1))

   **COUNT 2:** Conspiracy to Distribute Marijuana (21 U.S.C. §§ 846 and 841 (a)(1)) [at least 100 kilograms]

   **COUNT 3:** Possession of Firearm or Ammunition by Certain Prohibited Persons (18 U.S.C. § 922 (g)(9))

   **COUNT 4:** Possession of a Firearm in Furtherance of Drug Trafficking Offense (18 U.S.C. § 924(c))

## Agent Background

2. I am a Special Agent with the United Stated Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed with ATF since April 2013. Prior to working for ATF, I was employed as a police officer for the Sugar Land, TX police department. I have received training in federal firearms, explosives, and drug laws and regulations at the ATF National Academy and Federal Law Enforcement Criminal Investigator Training Program. I have investigated cases involving federal drug violations, involving unlawful sales, possession, manufacturing, and transportation of drugs. I have investigated cases involving federal explosives and firearms violations involving unlawful sales, possession, manufacture, and transportation of explosives and firearms. I have participated in a variety of different aspects of those investigations to include but not limited to surveillance, interviewing suspects, and the execution of search and arrest warrants.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

1

## Statement of Probable Cause

### Search Warrant Executed at 773 Shoreline Pointe

4. On April 9, 2014, detectives from the Citrus Heights Police Department's Special Investigations Unit executed a state search warrant at 773 Shoreline Pointe, El Dorado Hills, California.



Photo 1 – Guns, money, and drugs found at 773 Shoreline Pointe

5. At 773 Shoreline Pointe, law enforcement agents discovered a marijuana packing and shipping operation. Agents discovered numerous items used to package and transport processed marijuana. These items included garbage bags, clear plastic bags, canvas bags, Ziploc bags, packing tape, packing peanuts, cardboard boxes, plastic bins, plastic wrap, latex gloves, and shipping labels. Throughout the downstairs portion of the house, agents found processed marijuana in various stages of packaging for shipping and transport. This included processed marijuana in plastic bags and cardboard boxes (sealed and with shipping labels affixed).

6. Agents observed that steps appeared to have been taken to conceal this marijuana processing area of the downstairs of the residence from discovery. A high-end, aftermarket deadbolt (with numeric keypad) was used to lock the door leading from the upstairs to the downstairs area and a secondary air filtration unit was installed. Behind a false wall in the basement, agents found a large amount of marijuana packaged in large black garbage bags. The total amount of marijuana found in the house was

2

approximately 846 pounds.  Agents took a sample of the marijuana and tested it using a Nartec test kit. It tested positive for marijuana.



Photo 2 – 773 Shoreline Pointe, garbage bags filled with processed marijuana.

7. Law enforcement also discovered three larges safes in the house, one in the master bedroom and two in the garage.  The safes located in the garage contained firearms, ammunition, processed and packaged marijuana, jewelry, and bundles of US currency.  In total, law enforcement seized approximately $464,000 in cash from the residence.

///

///

///

///

///

///

3

 

Photo 3 – 773 Shoreline Pointe, safe #1 in garage     Photo 4 – 773 Shoreline Pointe, safe #2 in garage

8. The firearms found in the safes included:
   a. two AR-15-style pistols bearing no serial numbers and made from 80% lower receivers;
   b. a Beretta M92 9mm pistol bearing serial number E32983Z;
   c. a Sun Devil SD15-IT6 .223-caliber rifle bearing serial number 223-1684;
   d. a Smith & Wesson M&P .223-caliber rifle bearing serial number SM84869;
   e. a Springfield XD .40-caliber pistol bearing serial number MG228428; and
   f. a Ruger Mini-14 .223-caliber rifle bearing serial number 196-03125.

9. The following firearms found in the safes were confirmed by Citrus Height Police Department to be reported stolen:
   a. a Beretta M92 9mm pistol bearing serial number E32983Z out of Henderson, Nevada;
   b. a Smith & Wesson M&P .223-caliber rifle bearing serial number SM84869 out of the San Bernardino Sheriff's Office in Hesperia, California;
   c. a Ruger Mini-14 .223-caliber rifle bearing serial number 196-03125 out of Sacramento, California.

10. After conducting an gun trace through ATF, the following firearms found at 773 Shoreline Pointe were traced to Kendall THRIFT as the original purchaser:

4

      a.  a Sun Devil Model SD15 .223-caliber rifle bearing serial number 223-1684,

      b.  a Springfield Model XDM .40-caliber pistol bearing serial number MG228428.

11. On April 28, 2014, ATF Special Agent Matt Garrett, who is a firearm interstate nexus expert, provided a verbal opinion regarding the seized firearms. Special Agent Garrett received specialized training in researching the origin and place of manufacture of firearms and ammunition and determining the interstate nexus of a firearm and ammunition. It was the opinion of Special Agent Garrett that if the following firearms were received and/or possessed in the State of California, they traveled in or affected interstate commerce and/or foreign commerce:

      a.  Beretta M92 9mm pistol bearing serial number E32983Z

      b.  Smith & Wesson M&P .223-caliber rifle bearing serial number SM84869

      c.  Springfield XD .40-caliber handgun bearing serial number MG228428

      d.  Ruger Mini-14 .223-caliber rifle bearing serial number 196-03125

12. Numerous documents were found throughout the house that contained the name of Kendall THRIFT. These documents included a passport in THRIFT's name, bank account statements, a rental/credit application, a rental agreement, and various envelopes addressed to THRIFT with the address of 776 Roseholm Way, Henderson, NV 89002. A query of the Nevada Department of Motor Vehicles on THRIFT revealed his mailing and physical address to be 776 Roseholm Way, Henderson, NV 89002.

13. Law enforcement interviewed the homeowner of 773 Shoreline Pointe. The owner stated he rented the house to THRIFT for $3,200 dollars a month. The owner had THRIFT fill out a rental application. THRIFT filled out the rental application and stated he was self employed as the president of IT PITSTOP in Nevada, as a Network engineer, and makes $250,000 a year. The owner stated THRIFT told him he wanted to rent the house to be closer to his four children and their mother. When shown the property after the service of the search warrant, the owner stated the deadbolt lock on the door leading to the downstairs area and the air filtration system were not a part of the house when he rented it to THRIFT. THRIFT would meet the owner at different locations to pay for the rent. They would meet in shopping centers, but the owner would never come to the residence to collect the rent. The owner had not been to the residence at 773 Shoreline Pointe since THRIFT had moved in on September 1, 2013.

14. Based on the quantity of marijuana and cash seized, the firearms found at the residence, and the evidence indicating that other individuals were associated with the residence, I believe THRIFT is involved in a drug trafficking conspiracy.

15. State charges were filed against THRIFT on April 17, 2014 for Possession For Sale –
    Marijuana/Hashish (HS 11359 Felony), Prohibited From Possessing Firearms (PC 29805
    Felony), Possession of an Assault Weapon (30605(A) Felony), and Set/Reduce/Deny Bail
    – Public Protection; Seriousness of Crime (PC 1275 Hold).  Subsequently, felony arrest
    warrants were issued.

**Law Enforcement Interview: Lindsey Loya**

16. On April 22, 2014, law enforcement spoke with Lindsey Loya, THRIFT's former
    girlfriend.  She stated she met THRIFT after responding to a Craigslist ad for
    employment at one of THRIFT's marijuana dispensaries, Alternative Pain Solutions. Not
    long after Loya and THRIFT began a dating relationship. Loya stated after the marijuana
    dispensaries went out of business, THRIFT continued to sell marijuana to anyone that
    wanted to buy it. THRIFT would not sell anything less than five pounds of marijuana at a
    time to anyone.

17. Loya stated THRIFT operated an Information Technology (IT) business before and
    during his operating multiple marijuana dispensaries. THRIFT quickly realized he could
    earn more money by selling marijuana and selling marijuana became his only source of
    income. THRIFT's marijuana dispensaries eventually went out of business but he kept
    his IT business open.

18. Loya stated THRIFT asked her to put the utilities in her name at 773 Shoreline Pointe but
    she never gave THRIFT permission to. Loya stated she would visit THRIFT at 773
    Shoreline Pointe approximately once or twice a month and would stay there with him for
    approximately four to five days at a time. She stated THRIFT had access to all her
    personal information from when she was one of his employees. Loya stated that THRIFT
    puts all his assets in other people's names for two reasons. The first reason was that
    THRIFT was currently going through a divorce. THRIFT was attempting to hide how
    much money and/or assets he owns from his ex-wife.  The second reason was THRIFT
    did not want to raise any "red flags" to anyone about how much money he makes.

19. Loya stated THRIFT had intentions of purchasing the house at 773 Shoreline Pointe to
    "lay roots down at the house." Loya stated THRIFT had previously referred to the house
    at 773 Shoreline Pointe as his home. Loya stated THRIFT was the one who installed the
    deadbolt on the door leading to the downstairs area at 773 Shoreline Pointe. She stated
    THRIFT would not allow her to go downstairs after the deadbolt was installed. Loya
    stated THRIFT would send marijuana to people through the mail and would receive
    money through the mail in return. She stated THRIFT did not want a "paper trail" so he
    only accepted cash as payment.

20. Loya stated she had seen THRIFT "show-off" the firearms that were discovered at 773 Shoreline Pointe to his friends.

**Arrest of Kendall THRIFT for Domestic Violence**

21. At the time of the search, THRIFT was on active informal searchable probation out of Placer County until July 31, 2016. A California State Criminal History check on Kendall THRIFT revealed on or about July 21, 2013, THRIFT was convicted of a misdemeanor crime of domestic violence (California Penal Code 243(e)(1)).

22. On January 25, 2013, THRIFT was arrested by the Roseville Police Department and charged with Prevent/Dissuade Victim/Witness (136.1(a)(1) PC), Threaten Crime with Intent to Terrorize (422 PC), Bring Controlled Substance/Etc. Into Prison/Etc. (4573 PC), Manufacture/Sell/Possess/Etc. Metal Knuckles (21810 PC), and Battery: Spouse/Ex-Spouse/Date/Etc. (243(e)(1) PC)

23. The following is an excerpt from the original Roseville PD report as told to the responding officer by Malissa THRIFT (Victim, and Kendall THRIFT's wife):

   a. She feared a confrontation and decided to record their interaction today with her I-Phone.

   b. Kendall owns several marijuana dispensaries in southern California. He is very secretive but she knows he owns one in Victorville and one in Costa Mesa. Over the past few weeks Kendall has been trying to purchase a piece of property in Northern California. It is 80 acres that Malissa believes he is planning on using to cultivate marijuana. Malissa does not approve of this. Today Kendall brought the loan paperwork to Malissa for her signature. Malissa would not sign the paperwork. In addition she enquired about how much money they have. Kendall keeps many secrets from Malissa and he gives her money to pay bills and care for their children but he will not give her access to the accounts. Today she asked how much money they have. Kendall told her that he has $50,000 in Las Vegas, and another $180,000 in California.

   c. Malissa said she wanted access to their accounts or she would turn Kendall in to the authorities. Kendall told her she could not have it. He said he earned it and she did not. He said he would never give her access to it. Malissa said there would be repercussions to his actions. He took this as a threat and he advanced on Malissa. He grabbed her by the neck and threw her on the bed. He then got on top of her,

7

pinning her down. He then yelled, (I will quote from the recording directly instead of using Malissa's statement)

d.  Malissa – "Don't come near me."

Kendall – "I swear to God, you fucking threaten me again, ever fucking threaten my safety or freedom again, I will have you fucking killed. Don't ever, ever fucking do that. You think I can't pay fifty grand to have that done? Don't you ever fucking threaten me."

e.  The recording continues on where Malissa tells Kendall to leave and says she will take the children to school. She continually asks him to leave and Kendall throws Malissa's phone at a wall and is surprised when it does not break.

f.  Malissa had no visible injuries. Based on the recording and Malissa's statement, I asked her if she felt he could carry out the threat. She said that she believed he deals with bad people in his marijuana business. She believes he knows people that would kill her for money. Since he said he has $230,000 she knows he has the $50,000 to pay a hitman.

g.  Kendall said he and his wife had a verbal argument over finances. That was all however and there was no physical altercation. I asked him if I showed him a recording of the incident, would that change his statement. He said "no", that he had told the truth. I asked him if he wanted to hear the recording. I saw his confident expression disappear from his face. He said, "No". To try to illicit a response I played the recording anyway. After it stopped I asked him if he had lied to me. He admitted he did. I asked him why. He said he did not want to go to jail.

h.  At the time of his arrest, he had a backpack with him. At the jail I asked him if he had any contraband on his person or in his property. I informed him that bringing it into the jail would incur an additional charge. He told me he had "brass knuckles" in his backpack but no other illegal items. Once inside the jail I found he did in fact have metal knuckles. He also had a WD-40 can with a false compartment in it. Inside the compartment was 3.75 grams of marijuana.

24. On or about July 31, 2013, Kendall THRIFT was convicted of Threaten Crime with Intent to Terrorize (422 PC), and Battery: Non-Cohabitant Former Spouse/Etc. (243(e)(1) PC). Both of these convictions prohibit THRIFT from owning and/or possessing firearms under state law for ten years from the date of conviction under California Penal

Code 29805.  The conviction for 243(e)(1) PC (Misdemeanor Crime of Domestic Violence) also results in a lifetime prohibition under federal law of THRIFT owning and/or possessing firearms under 18 U.S.C. § 922(g)(9).

**Kendall THRIFT Taken into Custody on State Charges**

25. On July 31, 2014, detectives with Citrus Heights Police Department located Kendall THRIFT at the residence of Malissa THRIFT and took him into custody on outstanding state felony warrants.  The warrants included Possession For Sale – Marijuana/Hashish (HS 11359 Felony), Prohibited From Possessing Firearms (PC 29805 Felony), Possession of an Assault Weapon (30605(A) Felony), and Set/Reduce/Deny Bail – Public Protection; Seriousness of Crime (PC 1275 Hold).  The final charge made Kendall THRIFT ineligible for Bail. When questioned by detectives, Kendall THRIFT stated he knew he had outstanding felony warrants for his arrest but was waiting to turn himself in through his attorney. When questioned by detectives, Malissa THRIFT confirmed she knew Kendall THRIFT was wanted and she had not turned him in.  Malissa THRIFT stated Kendall THRIFT told her he had arranged to turn himself in at a future date with his attorney.

///

///

///

///

///

///

///

///

///

///

///

## Conclusion

26. Based on the above facts, I believe that there is sufficient probable cause that **KENDALL THRIFT** has committed the following criminal violations:

> **COUNT 1:**   **Possession with Intent to Distribute Marijuana (21 U.S.C. § 841 (a)(1))**
>
> **COUNT 2:**   **Conspiracy to Distribute Marijuana (21 U.S.C. §§ 846 and 841(a)(1)) [at least 100 kilograms]**
>
> **COUNT 3:**   **Possession of Firearm or Ammunition by Certain Prohibited Persons (18 U.S.C. § 922 (g)(9))**
>
> **COUNT 4:**   **Possession of a Firearm in Furtherance of Drug Trafficking Offense (18 U.S.C. § 924(c))**

I swear, under the penalty of perjury, that the forgoing information is true and correct to the best of my knowledge, information, and belief.

DAVID E. MORRIS
ATF Special Agent

Sworn and Subscribed to me on October 3, 2014,

Hon. ALLISON CLAIRE
United States Magistrate Judge

Approved as to form:

JUSTIN L. LEE
Assistant United States Attorney

10